The town of BRISTOL *v.* the town of BRAINTREE.

It is not a sufficient ground to quash an order of removal, that the overseer of the poor, who made the complaint, served the same, as constable, when he held both of those offices.

It is not necessary for justices to state, in the record of their proceedings, that they examined the pauper. The record must be in the form prescribed by the statute. The terms made use of in the form " after hearing the proofs and allegations," &c., comprehend the examination of the pauper as well as any other proof.

It is not a sufficient reason to quash an order to remove a man and his family, without naming them, unless it is made to appear that the pauper had a family, on whom the order was to operate, and if such order would not be good as to the family, it would only be quashed as to them.

APPEAL from an order of removal of a pauper.

It appeared from the copies of the appeal, that Luman Case, overseer of the poor of Bristol, filed his complaint before two justices, agreeably to the statute, setting forth that one William Amidon, late of Braintree, in the county of Orange, had come to reside in said Bristol, and had not gained a legal settlement in said Bristol, and had become chargeable, for his support, to said town of Bristol, and prayed that said Amidon might be examined, &c. Whereupon a warrant issued in due form of law, directed to either constable of said Bristol, to bring said Amidon before said justices on the 17th day of May, 1836, &c.—which warrant was executed by the said Luman Case, who was also one of the constables of said Bristol. The record of the justices who made the examination, after reciting the filing of the complaint and the issuing of the warrant, is as follows :—

" Whereupon, after hearing the proofs and examining the " same ;—It is considered by the court, that the said Wil- " liam Amidon has come to reside in the town of Bristol,

" and hath not gained a legal settlement therein, and that " the said William Amidon is chargeable to said town of " Bristol, when in fact, the said William Amidon belongs to, " and has his legal settlement in, the town of Braintree, and " that he ought, of right, to be removed to said town of " Braintree agreeably to law ;" and it further appeared from said record, that said justices ordered the pauper to be removed to said town of Braintree, on or before the 24th day of May, 1836, and on his neglect or refusal to comply with said order, that he be removed " with his family and effects, " according to the statute in such case, made and provided;" and that on the 10th day of December, 1836, the town of Braintree appealed to the (then) next stated term of the county court. Upon the entry of the appeal in the county court, the appellants moved to quash said order of removal,—

1. Because the complainant, Luman Case, served the process, which issued upon his own complaint.

2. It did not appear that the justices examined the pauper on oath.

3. Their certificate did not show that a copy of the order of removal was left with the town authorities of Braintree.

4. Neither does it show any notice to the town of Braintree.

5. The names of the pauper's family are not inserted in the order of removal.

The county court overruled the motion to quash, and the defendants excepted.

*C. Linsley,* for defendants.

I. The policy of our laws has been to commit the service of process to those wholly disinterested and disconnected with the proceeding ; and a person, on whose complaint the whole proceeding is had as an overseer of the poor, or a grand juror, is, in such a sense, a party to the proceeding, that he cannot serve a writ or other process in the case. And this results as well from general principles of law, as from a sound construction of our statutes.

It may be said, that the statute in this case directs the process to be directed to a constable, without any such condition as appears in the judiciary act. But the same may

be said of the justice act. Stat. 127.   The case of *Essex*
v. *Prentiss*, 6 Vt. R. 47, shows that this is to be  construed
in  connexion  with the judiciary act.   *Fairfield* v. *Hall*, 8
Vt. R. 68.   *Weston* v. *Coulson*, 1 Wm. Black. R. 506.

II. It is necessary that the pauper should be examined on
oath.   The statute is imperative.   If, from any cause, the
pauper  cannot  be examined,  such  as insanity, it makes an
exception to the rule, but does not affect the rule itself.

If the pauper must be examined, then it must so  appear
in the proceedings; for the town, seeking the removal, is bound
not only to proceed according to law, but to show  in the or-
der of removal, that the provisions of the statute have  been
complied with.   The right  to make the order  must appear
in the proceedings, but that right does not appear and  does
not exist,  until they  have  examined  the  pauper on oath.
Stat. 37, sec. 3.   *Waterford*  v. *Brookfield*, 2 Vt. R. 204.
*Hartland* v. *Williamstown*, 1 Aik. R. 251.

III. An order to  remove  A. B. and family is  erroneous
and, on motion, will be quashed.

*H. Needham*, for plaintiffs.

1. The complainant, in this case, had authority to  serve
the process  upon  the pauper,  as he was one  of the consta-
bles of Bristol.   The statute  requires the direction of the
process to the constable of the town.   See Stat. 370.

2. The law  does not require that it should appear, from
the  proceedings before the justices, that the pauper was ex-
amined on oath.   They  had  jurisdiction of the  matter, and
as their record is in the usual form, and shows, that, from the
evidence before them, they found the facts set forth, the pre-
sumption is that the  evidence was such  as the law requires.

3. Neither is it necessary that  it should  appear, from the
certificate of the justices, that a copy of the order of remo-
val was  left with the  town  authorities of Braintree.   *Hart-*
*land* v. *Williamstown*, 1 Aikens' R. 241.

4. Unless it appears from the records and proceedings, that
the pauper had a family, the exception taken, that the order
did not specify the  names of the pauper's family, cannot
prevail.

The opinion of the Court was delivered by

WILLIAMS, Ch. J.—The case comes before  us on excep-
tions to the judgment of the county court, overruling a  mo-
tion to quash the proceedings.

The first exception to the proceedings of the magistrates is, that the constable, who served the process issuing from the magistrate, was the person who made the complaint. It appears that Mr. Case was overseer of the poor of the town of Bristol, as well as constable of the town.

The proceedings to be had before magistrates, for the removal of paupers, are pointed out by statute. The complaint must be made by the overseer of the poor, and the warrant must issue to the constable of the town, to bring the pauper before the magistrates. It is no objection to any of the persons who are to perform the several duties required by the statute, that they have an interest in the removal. The magistrates may be inhabitants of the town. The hearing before them is *ex parte*, and but initiatory to the litigated proceedings which may be had when any other town becomes interested, in consequence of an order of removal. The statute, in its enactments, and in the form given, requires that the warrant should be directed to, and served by, the constable, and he is no more in interest because he happens to be the overseer of the poor and the complainant. We can see no good reason why the enactment of the statute should be dispensed with, nor can we see any thing improper in the constable serving the warrant, when he has preferred the complaint as overseer of the poor.

It is also objected that it does not appear that the pauper was examined on oath.

The statute requires the magistrates to examine the pauper upon oath, and this must be done when it is practicable. This examination is the evidence or proof upon which they are to act. The form of making the record, as prescribed in the statute, and which it appears was followed by the magistrates in the case before us, is, that, " after hearing the proofs " and allegations, and examining the same, it is considered," &c. From this, it sufficiently appears, that they made all necessary examination, whether of the pauper or others. It is not required that they should state, in the record, that the pauper was examined, and it would be wholly superfluous and unnecessary to set it forth,

The third and fourth exceptions have been abandoned. Whether notice was given, or not, is not to be certified by the magistrates, as it will not appear from any proceedings had before them.

It is further objected, that the names of the family are not inserted in the order of removal.  The statute, neither in its enactments nor form, requires that the names of the family should be inserted in the  complaint, order, or warrant of removal.   The third section  contemplates a  proceeding  only against the pauper.   The form is general, to remove the pauper with his family and effects, and we can see  no  more difficulty  in  executing the  warrant,  by  removing  the family, without their being named,  than  in  removing their effects, when not  particularized.

If, however,  the order is  bad,  on this  account, as it respects the family, it should only have been quashed as to the family,  and would  have been  good as  to the  pauper,  and should have been affirmed as to him.

To avail themselves of this objection,the town of Braintree should have made  it appear  that  the pauper  had a  family, and the motion  should  have  been  to quash  the order, as to the family.   But they would not have been entitled to have the whole order quashed, which is made in the form given by the statute,and which might have been bad if not made in that form, unless it had been made to appear that there was a family, on which  it was  to operate, and  who, by  the  order, were to be removed,  and made chargable, to the town of  Braintree.

It  is no where alleged or stated that the  pauper had  any family who were to be removed.

The  judgment of  the county court must, therefore, be affirmed,